1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY JONES,<br><br>            Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | Case No.  1:22-cv-00769-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 11, 12) |

11
12
13
14
15
16
17
18
19
20

**I.**

**INTRODUCTION**

Plaintiff Ricky Jones ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his concurrently submitted applications for Social Security benefits pursuant to Title II and Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]  For the reasons set forth below, Plaintiff's appeal shall be denied.

21
22
23
24
25
26
27
28

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 7, 8, 9.)

**II.**

**BACKGROUND**[2]

Plaintiff concurrently filed the instant applications for Social Security benefits under Title II and for Supplemental Security Income ("SSI") under Title XVI on January 10 and 13, 2020, alleging disability beginning April 30, 2019.  (See Admin. Rec. ("AR") 231–32, 235–44, ECF No. 10-1, 10-2.)  Plaintiff's claims were initially denied on April 13, 2020, and denied upon reconsideration on June 25, 2020.  (AR 121–26, 128–33.)  On March 2, 2021, Plaintiff, represented by counsel,[3] appeared via telephonic conference, for an administrative hearing before ALJ Regina L. Warren (the "ALJ").  (AR 40–70.)  Vocational expert ("VE") Kevin Ross, M.S., CRC, also testified at the hearing.  On April 14, 2021, the ALJ issued a decision denying benefits.  (AR 20–39.)  On January 27, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 9–14.)

Plaintiff initiated this action in federal court on June 22, 2022, and seeks judicial review of the denial of his applications for benefits.  (ECF No. 1.)  The Commissioner lodged the administrative record on September 26, 2022.  (ECF No. 10.)  On November 10, 2022, Plaintiff filed a motion for summary judgment.  (ECF No. 11.)  On December 27, 2022, Defendant filed a brief in opposition.  (ECF No. 12.)  No reply was filed and the matter is deemed submitted on the pleadings.

**III.**

**LEGAL STANDARD**

**A.    The Disability Standard**

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

[3] At the administrative level, Plaintiff was represented by attorneys Daniel W. McDonald and Brenda Aguirre, of the McDonald law firm.  Ms. Aguirre represented Plaintiff at the hearing before the ALJ.  (See AR 23, 8.)  Plaintiff is currently represented by attorney Steven G. Rosales, of the Law Officers of Lawrence D. Rohlfing, Inc., CPC.  (See ECF No. 11 at 1.)

determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[5] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[5] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks both disability and SSI benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to the instant matter.

RFC.  20 C.F.R. § 416.920(e); <u>Nowden v. Berryhill</u>, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, <u>available at</u> 1996 WL 374184 (Jul. 2, 1996).[6]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  <u>See</u> 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); <u>Lounsburry v. Barnhart</u>, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a VE.  <u>See</u> 20 C.F.R. § 404 Subpt. P, App. 2; <u>Lounsburry</u>, 468 F.3d at 1114; <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " <u>Ford</u>, 950 F.3d at 1149 (quoting <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995)).

### B.    Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  <u>See</u> <u>Lewis v. Apfel</u>, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

---

[6] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  <u>Han v. Bowen</u>, 882 F.2d 1453, 1457 (9th Cir. 1989); <u>see also</u> <u>Avenetti v. Barnhart</u>, 456 F.3d 1122, 1124 (9th Cir. 2006).

Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which she did not rely; rather, the Court may review only the reasons stated by the ALJ in her decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

///

///

**IV.**

**THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The ALJ conducted the five-step disability analysis and made the following findings of fact and conclusions of law as of the date of the decision, April 14, 2021 (AR 25–34):

At step one, the ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023, and Plaintiff has not engaged in substantial gainful activity since April 30, 2019, the alleged onset date.  (AR 25–26 (citing 20 C.F.R. §§ 404.1571 et seq.; 416.971 et seq.).)

At step two, the ALJ determined Plaintiff has the following severe impairments: diabetes mellitus with peripheral neuropathy, and hypertension.  (AR 26 (citing 20 C.F.R. §§ 404.1520(c); 416.920(c)).)  The ALJ also noted Plaintiff alleged a disability based in part on blindness or low vision, and various musculoskeletal pains; however, the ALJ determined these conditions were nonsevere, causing less than minimal limitations in Plaintiff's ability to perform basic work activities within the at-issue period, based on her findings in the medical record.  (AR 26–27.)  Nonetheless, the ALJ noted she considered any potential effects these purported impairments might cause or contribute in combination with Plaintiff's other impairments to the RFC.  (AR 27.)  In addition, the ALJ noted Plaintiff's application materials alleged a disability based in part on anxiety, depression, and mood swings, and in the brief submitted by Plaintiff's counsel at the administrative level, Plaintiff asserted the position that he had a severe medically determinable impairment of adjustment disorder.   (Id.)   However, the ALJ noted Plaintiff's objective mental/psychiatric statuses on examination were generally normal.   Further, during communications with the Agency, Plaintiff denied having any mental health problems and he attributed any allegations of mental health issues to potentially coming from his attorney without his endorsement.   Accordingly, the ALJ concluded Plaintiff has no medically determinable mental impairments.

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 27–28 (citing 20 C.F.R. §§ 404.1520(d); 404.1525;

6

404.1526; 416.920(d); 416.925; 416.926).)   In reaching this decision, the ALJ considered

Plaintiff's severe physical impairments under the listings and determined the medical record did

not document findings necessary to meet the criteria set forth under these listings.  (AR 28.)

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform:

> **medium work as defined in 20 CFR 404.1567(c) and 416.967(c),
> except he can lift up to 0 pounds occasionally, 25 pounds or less
> frequently; stand and walk for 6 hours; sit for 6 hours; and
> unlimitedly push or pull with the extremities.**

(AR 28–31 (citing 20 C.F.R. §§ 404.1529; 416.929; SSR 16-3p, available at 2017 WL 5180304

(Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff is capable of performing past relevant work as a

Customer Service Representative, Retail Sales Clerk, and General Office Clerk.  (AR 31–32

(citing 20 C.F.R. §§ 404.1565; 416.965).)

Furthermore, in addition to past relevant work, the ALJ determined that other jobs exist in

significant numbers in the national economy that Plaintiff can perform, such as:

- Janitor (Dictionary of Occupational Titles ("DOT") 381.687-018), a medium exertion
  position with a specific vocational preparation ("SVP") level of 2, and approximately
  17,290 jobs available in the national economy;

- Automobile Detailer (DOT 915.687-034), a medium exertion position with an SVP level
  of 2, and approximately 39,800 jobs available in the national economy; and

- Hand Packager (DOT 920.587-018), a medium exertion position with an SVP level of 2,
  and approximately 42,000 jobs available in the national economy.

(AR 32–33 (citing 20 C.F.R. §§ 404.1569; 404.1569(a); 416.969; 416.969(a); 20 C.F.R. Part 404,

Subpart P, Appendix 2; SSR 83-11, available at 1983 WL 31252 (Jan. 1, 1983); SSR 83-12,

available at 1983 WL 31253 (Jan. 1, 1983); SSR 83-14, available at 1983 WL 31254 (Jan. 1,

1983); SSR 85-15, available at 1985 WL 56857 (Jan. 1, 1985)).)  The ALJ based this finding on

the considerations of Plaintiff's age, education, work experience, and RFC.  More specifically,

the ALJ noted Plaintiff was born on February 6, 1982, and was 37 years old (which is defined as a

younger individual age 18–49) on the alleged disability onset date; Plaintiff has at least a high

1  school education; and transferability of job skills is not material to the determination of disability

2  because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is

3  "not disabled," whether or not Plaintiff has transferrable job skills.  (Id. (citing 20 C.F.R. §§

4  404.1563; 416.963; 404.1564; 416.964; SSR 82-41, available at 1982 WL 31389 (Jan. 1, 1982);

5  20 C.F.R. Part 404, Subpart P, Appendix 2).)  With respect to the identified jobs, the ALJ noted

6  the VE's testimony was consistent with the DOT and, with respect to the specified RFC

7  limitations, the VE's testimony was based on his professional experience.  (AR 33.)

8      Therefore, the ALJ found Plaintiff has not been under a disability, as defined in the Social

9  Security Act, from April 30, 2019 (the alleged onset date), through April 13, 2021 (the date of

10  decision).  (AR 33–34 (citing 20 C.F.R. §§ 404.1520(f); 416.920(f)).)

11                                                  **V.**

12                                          **DISCUSSION**

13      Plaintiff asserts only one challenge on appeal: the ALJ improperly rejected Plaintiff's

14  testimony.[7]  (ECF No. 11 at 6–16.)

15  **A.     Plaintiff's Testimony**

16      Plaintiff testified that he experiences pain in his back and neck all the time.  (AR 48–49.)

17  The neck pain radiates down the spine, "mid-backway."  (AR 49.)  The pain is particularly

18  "excruciating" in the morning and right before Plaintiff goes to bed.  (Id.)  Plaintiff testified he

19  takes muscle relaxers prescribed by his doctor for the pain.  (Id.)  This included Tylenol-codeine

20  "a couple times"; however, Plaintiff acknowledged that the last time he was prescribed Tylenol-

21

22  [7] Notably, Plaintiff does not challenge the ALJ's determination at steps two and three that his severe impairments
   include diabetes mellitus with peripheral neuropathy and hypertension but do not include his alleged impairments of

23  blindness/low vision, musculoskeletal pains, or chronic back and neck pain (which the ALJ deemed to be nonsevere);
   nor does Plaintiff challenge the ALJ's finding that he did not meet or equal any Listing.  Plaintiff also does not

24  challenge the ALJ's summary of the medical evidence of record (in fact, he stipulates in his opening brief that the
   ALJ generally "fairly and accurately summarized the medical evidence of record" (see ECF No. 11 at 4)).

25  Importantly, Plaintiff does not challenge the ALJ's evaluation of the medical opinion evidence, including her finding
   that the opinions of Drs. Richard Lewis, M.D. and C. Scott, M.D.—who opined that Plaintiff was capable of medium

26  exertional work—were persuasive (AR 31 (citing AR 71–81, 82–92)).  Nor has Plaintiff challenged the ALJ's
   consideration and rejection of the lay witness testimony, which the ALJ deemed to be substantially similar to

27  Plaintiff's symptom allegations.  As such, any challenges to these particular issues are deemed waived.  Lewis, 236
   F.3d at 517 n.13; see also Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will

28  not consider any claims that were not actually argued in appellant's opening brief" and will only "review … issues
   which are argued specifically and distinctly in a party's opening brief.").

codeine was approximately three months prior to the disability hearing, and that he no longer takes that medication.  (AR 59.)  Plaintiff testified that, as a result of his back and neck pain, he can only stand for five to ten minutes; he can sit for five to ten minutes; he can walk around the inside of his home but does not walk outside; he cannot jog or run; and he does not perform housework.  (AR 49–51.)  Plaintiff testified that his doctor recommended surgery, but he did not proceed because he could not afford it, so he received epidural injections for approximately three months instead.  (AR 51–52.)  When pressed for further details, however, Plaintiff admitted he did not recall the doctor's name or what type of surgical procedure was recommended, but indicated the surgery was related to either his neck or his spine, "like a spinal neck reconfiguration."  (AR 52–53.)  Plaintiff testified that he can lift up to 15 or 20 pounds, but could not confirm that any of his doctors placed any lifting restrictions on him; instead, Plaintiff testified that, while he was receiving injections, he was instructed not to overexert himself, and not to lift anything over 30 pounds.  (AR 53–54.)

Plaintiff testified that he has diabetes.  Plaintiff testified there were previously lapses in his insulin treatment because his prescriptions are refillable every 60 days, but he would sometimes run out before getting his prescription refilled; however, Plaintiff testified he did not run out of insulin in 2021.  (AR 54–55.)  Plaintiff testified to some numbness in his toes; he testified that his doctor recommended he see a foot doctor, but no doctor ever prescribed a diabetic shoe for Plaintiff to wear.  (AR 55.)

Plaintiff testified he frequently experiences some blurriness with his eyes.  (AR 55–56.) Plaintiff also confirmed that no doctor ever prescribed corrective lenses, and Plaintiff never fulfilled any prescriptions for eyeglasses, but he did purchase some $40 glasses and they help him "clear up the blurriness a little bit."  (Id.)

Plaintiff reported right knee pain.  (AR 56.)  He testified that he received an epidural injection in the knee and he wears a soft brace.  (Id.)

Plaintiff testified that he attended physical therapy for approximately four to five months in 2019 for his neck, back, and right knee.  (AR 56–57.)  During his physical therapy appointments, Plaintiff would treat with "physical massages" around the upper and lower back

and neck areas, he would use the "massage roller machine" for ten to 15 minutes, and he would receive a TENS unit treatment.[8]  (AR 58.)  However, Plaintiff testified that this treatment only "suppressed the pain."  (Id.)  In addition, the ALJ noted the longitudinal record submitted by Plaintiff in support of his disability claims—which counsel confirmed to be complete—contains no physical therapy records.  (AR 57.)

Finally, Plaintiff testified that he worked as a sales rep, an HR rep, and a customer care rep. from 2013 through 2019.  (AR 59.)  Plaintiff left his customer care rep position in 2014 in order to take a different job.  (AR 60.)  Plaintiff was hired for the HR rep job in 2015 through a temp agency; that position lasted for eight months.  (Id.)  And Plaintiff was terminated from his sales rep job in 2019 because he wasn't able to make their quotas for sales.  (See AR 59–60.)

**B.    Legal Standard**[9]

The ALJ is responsible for determining credibility,[10] resolving conflicts in medical testimony, and resolving ambiguities.  Andrews, 53 F.3d at 1039.  A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.").

Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.

---

[8] A TENS (transcutaneous electrical nerve stimulation) unit is a method of pain relief involving the use of a mild electrical current delivered to the affected area on the body.  The electrical impulses can reduce the pain signals going to the spinal cord and brain, which may help relieve pain and relax the muscles.

[9] Although Defendant emphasizes disagreement with the "clear and convincing reasons" standard in order to preserve the issue for future appeals, Defendant acknowledges it is the applicable standard for weighing credibility in the Ninth Circuit.  (ECF No. 12 at 11 n.4.)

[10] SSR 16-3p applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, at *1-2.

If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

> If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.  In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.

Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence."  See Vertigan, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").  Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide an additional reason for discounting the testimony.  See Burch, 400 F.3d at 680–81; see also Stobie v. Berryhill, 690 Fed. App'x 910, 911 (9th Cir. 2017) (finding ALJ gave two specific and legitimate clear and convincing reasons for rejecting symptom testimony: (1) insufficient objective medical evidence to establish disability during the insured period and (2) symptom testimony conflicted with the objective medical evidence).

Nevertheless, the medical evidence "is still a relevant factor in determining the severity of [the] claimant's pain and its disabling effects."  Burch, 400 F.3d at 680–81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).  Indeed, Ninth Circuit caselaw has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records, deeming the latter sufficient on its

own to meet the clear and convincing standard.  See Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (affirming ALJ's determination claimant's testimony was "not entirely credible" based on contradictions with medical opinion)) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); see also Woods v. Comm'r of Soc. Sec., No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be  sufficient." (emphasis in original)).

Additional factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284.  Thus, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of her symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  SSR 16-3p, at *5.

Finally, so long as substantial evidence supports the ALJ's assessment of a claimant's subjective complaint, the Court "will not engage in second-guessing."  Thomas, 278 F.3d at 959.

### C.   Analysis

As noted, the ALJ determined Plaintiff has the severe impairments of diabetes mellitus with peripheral neuropathy, and hypertension (AR 26), which Plaintiff has not challenged.  As a

result, the ALJ was required to make a credibility finding as to Plaintiff's own testimony. Valentine, 574 F.3d at 693; Lambert, 980 F.3d at 1277.  Because the ALJ made no finding that Plaintiff was malingering, she was required to give clear and convincing reasons as to why she did not find Plaintiff's subjective contentions about his limitations to be persuasive.  Id.

       1.     Activities of Daily Living ("ADLs")

One reason the ALJ identified was that Plaintiff's ADLs do not support his allegations of debilitating symptoms.  (AR 29.)  The ALJ noted Plaintiff mentioned he does some household chores, like cleaning and washing dishes; he has no problems with performing his own personal care tasks; he can prepare simple meals; he is able to drive; he has not been prescribed any special shoes to ambulate; and he worked under an IHSS program for a portion of the at-issue period and received unemployment benefits.  (Id.)  The ALJ concluded Plaintiff's ADLs demonstrate that his severe impairments did not cause him to be as limited as alleged, and therefore do not fully support Plaintiff's subjective complaints as to the intensity, persistence, and limiting effects of the symptoms purportedly caused by his impairments.  (Id.)  This finding constitutes a clear and convincing reason to support the ALJ's credibility determination.  Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir. 2012), superseded by regulation on other grounds; Valentine, 574 F.3d at 693.

Plaintiff acknowledges the ALJ discussed his ADLs, but argues this discussion is insufficient to support an adverse credibility determination because the ALJ does not identify specific symptoms or limitations that are contradicted by the ADLs, nor does she demonstrate the ADLs "meet the threshold for transferrable work skills."  (See ECF No. 11 at 8, 12–13, 15–16.)

However, Ninth Circuit caselaw demonstrates that ADLs may be grounds for discounting allegations that an impairment is so severe it is totally debilitating, even if they are not directly transferrable to a work setting.  See Molina, 674 F.3d at 1112–13 (noting "the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferrable to a work setting … Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (internal

1    citations omitted).

2    Relatedly, Plaintiff's argument that the ALJ did not identify any specific inconsistent

3    allegations of limitations is also unavailing.  As noted, "[e]ngaging in daily activities that are

4    incompatible with the severity of symptoms alleged can support an adverse credibility

5    determination."  Ghanim, 763 F.3d at 1165.  In order to reach such a conclusion, the Ninth Circuit

6    generally requires the ALJ to describe the daily activities, note whether the claimant performs

7    them alone or with assistance, and evaluate whether the nature of each activity "comprise[s] a

8    'substantial' portion of [the claimant's] day, or [is] 'transferrable' to a work environment."  Id.

9    However, even where a claimant's activities "suggest some difficulty functioning, they may [still]

10   be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a

11   totally debilitating impairment."  Molina, 674 F.3d at 1112–13 (citing Turner v. Comm'r of Soc.

12   Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine, 574 F.3d at 693).

13   In Valentine v. Astrue, for example, the ALJ determined the claimant "demonstrated

14   better abilities than he acknowledged in his written statements and testimony" and that his "non-

15   work activities … are inconsistent with the degree of impairment he alleges."  Valentine, 574

16   F.3d at 693.  The ALJ further remarked on the claimant's ADLs, but acknowledged these

17   activities did not suggest that the claimant could return to his old job.  Id.  Instead, the ALJ

18   indicated she thought the ADLs suggested the claimant's later claims about the severity of his

19   limitations were exaggerated.  Id.  The Ninth Circuit found the ALJ provided clear and

20   convincing reasons to reject the claimant's subjective complaint testimony because she identified

21   evidence that directly contradicted the claimant's claims that his PTSD was so severe that he was

22   unable to work, including contentions about how debilitating his fatigue was.  Id.  Thus, as

23   demonstrated, evidence of ADLs need not directly contradict or disprove a specific alleged

24   limitation, but may cut against the ultimate claim of disability based on the allegation that

25   impairments are "totally debilitating."

26   Similarly here, the ALJ found Plaintiff's ADLs do not support the alleged severity of

27   Plaintiff's impairments.  Furthermore, in the instant matter, in addition to general activities such

28   as cleaning or self-care or driving, the ALJ noted Plaintiff was working under an IHSS program

for a period of time after the alleged date of disability onset, and he received unemployment benefits.  (AR 29.)  This finding, which Plaintiff neither discusses nor disputes, not only supports the ALJ's conclusion that Plaintiff' ADLs are inconsistent with his claim of debilitating symptoms, but also her finding that Plaintiff is capable of returning to his prior work.  The ADLs discussed by the ALJ, therefore, constitute substantial evidence that supports the ALJ's credibility determination.  Molina, 674 F.3d at 1112–13; Valentine, 574 F.3d at 693.  Plaintiff's argument is unavailing.

Plaintiff also asserts that the ALJ mischaracterized the evidence and cherry-picked the record to support her adverse credibility determination.  (See ECF No. 11 at 13–14.)  However, this argument is somewhat undermined by Plaintiff's election to—rather than provide his own summary of the medical record—stipulate that, except as specified later in his argument section, "the ALJ fairly and accurately summarized the medical evidence of record."  (Id. at 4.)  Furthermore, even though he reserved the right to dispute the ALJ's summary of the evidence, Plaintiff's argument fails for lack of support where he does not point to any notes in the record that demonstrate the ALJ mischaracterized or cherry-picked the record, or otherwise provide substantive argument in support of his contention.[11]  Thus, the Court finds this argument is also unavailing.

2.    Allegations Not Supported by the Objective Medical Record

Another reason provided by the ALJ is that Plaintiff's allegations are unsupported by and not entirely consistent with the medical evidence or other evidence in the record.  (AR 29–30.)  For example, the ALJ noted Plaintiff's allegations of uncontrollable diabetes was not supported by the record where:

> the claimant was not objectively limited in his physical functioning to any substantial degree. For instance, the claimant largely had a normal gait. There were no findings of any significant atrophy to suggest nonuse of a muscle. The claimant generally exhibit[ed] full strength. Reported symptoms of fatigue, diarrhea, nausea, and/or vomiting appeared related to the claimant not taking his diabetes medication properly, as opposed to uncontrollable diabetes. (See e.g. Exhibit(s) 1F/2-10, 2F/5/22, 4F/13-14, 6F/5-8).

---

[11] Incidentally, the Court notes Plaintiff's brief regarding this argument refers to the "ALJ's rejection of Villalobos' testimony," which the Court concludes was a cut and paste typographical error.

(AR 30.)  With respect to Plaintiff's alleged hypertension, the ALJ noted Plaintiff's allegations of completely debilitating symptoms were unsupported by the record because Plaintiff "had many physical examinations where his heart sounded normal, and he was generally alert and/or oriented" and "he did not develop any significant cardiac/cardiovascular conditions beyond hypertension."  (Id.)  Nonetheless, the ALJ considered Plaintiff's symptoms arising from his diabetes and hypertension impairments and ultimately reached an RFC determination that limited Plaintiff to medium work, and included limitations with respect to lifting, standing, and walking.  (See AR 28.)

Based on the foregoing, the Court finds that, as for the ALJ's reliance and analysis of the objective medical evidence in weighing Plaintiff's testimony, such analysis is supported by substantial evidence, and Plaintiff has not sufficiently demonstrated error in the ALJ's conclusions regarding the objective medical evidence.  See Stout, 454 F.3d at 1055–56; Shineski, 556 U.S. at 409.

The critical issue is whether the ALJ provided a clear and convincing reason or reasons to reject Plaintiff's testimony apart from the finding that Plaintiff's allegations are not corroborated by the objective medical evidence.  In disputing the ALJ's adverse credibility determination, Plaintiff argues the ALJ's discussion of the medical evidence is insufficient to reject his testimony because an ALJ may not reject subjective pain testimony solely on the basis of objective medical evidence.  (ECF No. 11 at 9–10.)  Plaintiff's assertion is partially-accurate.  That is, a lack of objective medical evidence is a proper factor the ALJ may consider in weighing a claimant's testimony, but it cannot form the *sole* basis presented by the ALJ for rejecting pain testimony.  See Vertigan, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").  Thus, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide an additional

1    reason for discounting the testimony.

2            However, as previously noted, the Ninth Circuit has provided that contradiction between

3    the claimant's testimony and the relevant medical evidence is a sufficient basis for an adverse

4    credibility finding.    Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) ("The ALJ …

5    identified several contradictions between claimant's testimony and the relevant medical evidence

6    and cited several instances of contradictions within the claimant's own testimony.    We will not

7    reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence.");

8    Carmickle, 533 F.3d at 1160 (affirming ALJ's determination claimant's testimony was "not

9    entirely credible" based on contradictions with medical opinion); Hairston, 827 Fed. App'x at 773

10    (quoting Carmickle with approval) ("[c]ontradiction with the medical record is a sufficient basis

11    for rejecting the claimant's subjective testimony."); see also Woods, 2022 WL 1524772, at *10

12    n.4 ("While a *lack* of objective medical evidence may not be the sole basis for rejection of

13    symptom testimony, inconsistency with the medical evidence or medical opinions can be

14    sufficient.") (emphasis in original) (citing e.g., Stobie, 690 Fed. App'x at 911 (finding ALJ gave

15    two specific and legitimate clear and convincing reasons for rejecting symptom testimony: (1)

16    insufficient objective medical evidence to establish disability during the insured period and (2)

17    symptom testimony conflicted with the objective medical evidence)).

18            Here, the Court finds the ALJ reached a conclusion that "the objective medical record as a

19    whole does not support the alleged severity of [Plaintiff's] impairments," which indicates a

20    finding that Plaintiff's allegations were uncorroborated by the objective medical evidence rather

21    than contradicted by it.    Accordingly, the Court agrees with Plaintiff that the ALJ's findings,

22    based on the objective medical record alone, are insufficient to support her adverse credibility

23    determination.    Vertigan, 260 F.3d at 1049.    However, in the instant matter, the ALJ has

24    identified multiple other bases in support of her adverse credibility determination (as the Court

25    has discussed herein), some of which Plaintiff does not even address or challenge.    See Burch,

26    400 F.3d at 680–81 ("Although lack of medical evidence cannot form the sole basis for

27    discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis ...

28    Contrary to Burch's argument, the ALJ did not solely rely on the minimal objective evidence and

Burch's daily activities in discrediting her testimony.  Indeed, these factors were among those he relied on, however, the ALJ made additional specific findings to support his credibility determination."); see also Ruiz v. Comm'r of Soc. Sec. Admin., 490 Fed. App'x. 907, 908–09 (9th Cir. 2012) (affirming ALJ's decision to deny benefits and concluding that, because the ALJ listed nine rationale for rejecting the claimant's testimony and the claimant challenged only one of the rationale, the ALJ's conclusion would still be supported by the unchallenged rationale). Therefore, Plaintiff's argument that the ALJ committed reversible error in reaching her credibility determination because she relied solely on the objective medical evidence is unavailing.

### 3.    Conservative Treatment

Evidence that a claimant's medical treatment was relatively conservative may properly be considered in evaluating a claimant's subjective complaints.  See Tommasetti, 533 F.3d at 1039–40; Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted).

Here, the ALJ determined Plaintiff's "treatment was not extensive, consisting largely of just medication and observation."   "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."  Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).  Furthermore, even though the ALJ elicited testimony from Plaintiff that he also received steroidal injections for a few months, the ALJ's determination that Plaintiff's overall treatment was "conservative" remains rational.  See Walter v. Astrue, No. EDCV 09-1569 AGR, 2011 WL 1326529, at *3 (C.D. Cal. Apr. 6, 2011) (ALJ permissibly discredited claimant's allegations based on conservative treatment consisting of Vicodin, physical therapy, and an injection); Agatucci v. Berryhill, 721 Fed. App'x 614, 618 (9th Cir. 2017) ("We uphold [the] ALJ's rational interpretation that, because [plaintiff's] condition did not necessitate surgery, her symptoms were not as debilitating as she alleged.") (citing Parra, 481 F.3d at 751); see also Martin v. Colvin, No. 1:15-cv-01678-SKO, 2017 WL 615196, at *10 (E.D. Cal. Feb. 14, 2017) ("[T]he fact that Plaintiff has been prescribed narcotic medication or received injections does not negate the reasonableness of the ALJ's

finding that Plaintiff's treatment as a whole was conservative, particularly when undertaken in addition to other, less invasive treatment methods."); Zaldana v. Colvin, No. CV 13-7820 RNB, 2014 WL 4929023, at *2 (C.D. Cal. Oct. 1, 2014) (finding that evidence of treatment including Tramadol, ibuprofen, and "multiple steroid injections" was a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination).

Based on the foregoing authorities, the Court concludes the ALJ's finding that Plaintiff's treatment was conservative constitutes a specific and legitimate reason for reaching her adverse credibility determination. Furthermore, Plaintiff does not address or dispute the ALJ's discussion of his treatment or the finding that it was conservative. He therefore waives argument as to this issue. Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929; see also Ruiz, 490 Fed. App'x. at 908–09.

### 4.     Noncompliance with Medication

Relatedly, "[t]he ALJ is permitted to consider lack of treatment in [her] credibility determination." Burch, 400 F.3d at 681 (affirming ALJ discrediting testimony due to lack of consistent treatment; commenting on claimant's failure to attend physical therapy, chiropractor, or do home exercises, "[t]hat [the claimant]'s pain was 'not severe enough to motivate [her] to seek [these forms of] treatment, even if she sought some treatment, is powerful evidence regarding the extent to which she was in pain.") (internal citations omitted); see also Molina, 674 F.3d at 1114 (claimant's failure to assert a good reason for not seeking treatment can cast doubt on the sincerity of the claimant's pain testimony); Stenberg v. Comm'r Soc. Sec. Admin., 303 Fed. App'x 550, 552 (9th Cir. 2008) (finding noncompliance with recommended treatments, such as attending only half of scheduled therapies and refusing psychological counseling and continued physical therapy, constituted substantial evidence in support of finding the claimant was not entirely credible); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (holding that "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment … can cast doubt on the sincerity of the claimant's [subjective symptom] testimony.").

Here, the ALJ repeatedly references the record to note Plaintiff's "compliance problems"

with regularly taking his prescribed diabetes medication.  For example, the ALJ remarks:

> the claimant's trouble in staying compliant with his treatment recommendations, especially taking his diabetes medication as prescribed, appeared to be a major factor in the claimant's abnormal glucose levels.  When being more compliant, the claimant's blood sugar levels were better controlled….  In addition, the claimant had a few hyperglycemic events, some of which required hospital care, including at least one episode of ketoacidosis, but the claimant showed significant improvement upon discharge and compliance problems appeared to play a role….  Overall, the claimant was not objectively limited in his physical functioning to any substantial degree.  For instance, the claimant largely had a normal gait.  There were no findings of any significant atrophy to suggest nonuse of a muscle.  The claimant generally exhibit[ed] full strength.  Reported symptoms of fatigue, diarrhea, nausea, and/or vomiting appeared related to the claimant not taking his diabetes medication properly, as opposed to uncontrollable diabetes.  (See e.g. Exhibit(s) 1F/2-10, 2F/5/22, 4F/13-14, 6F/5-8).

(AR 29–30.)  Based on the foregoing authorities, the Court concludes the ALJ's finding that Plaintiff's failure to follow a prescribed course of treatment—here, to regularly take his diabetes medication—constitutes a specific and legitimate reason for reaching her adverse credibility determination.  Burch, 400 F.3d at 681; Stenberg, 303 Fed. App'x at 552; Fair, 885 F.2d at 603.  Further, Plaintiff once again does not address or dispute the ALJ's discussion of his medication noncompliance and therefore waives argument as to this issue.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929; see also Ruiz, 490 Fed. App'x. at 908–09.

### 5.   Plaintiff's Remaining Arguments

Plaintiff's remaining arguments are also unpersuasive.  For example, Plaintiff argues the ALJ's explanation for discounting his testimony is boilerplate.  (ECF No. 11 at 8.)  Plaintiff also argues the ALJ's statement that the objective evidence does not support the testimony is conclusory, and the ALJ fails to connect any of Plaintiff's testimony to her analysis.  (Id. at 10, 11, 16.)  Similarly, Plaintiff argues the ALJ's finding that his testimony is not entirely consistent with the other evidence in the record is vague and conclusory.  (Id. at 10–11.)  These statements, however, are all belied by a plain reading of the ALJ's decision, and the detailed summary and discussion of the record and the ALJ's reasons in support of her decision, which follow the at-issue boilerplate statement quoted by Plaintiff in his brief.  (See AR 29–31.)  As such, these remaining arguments are unavailing.

**VI.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds the ALJ provided multiple clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony.

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF No. 11) is DENIED; and

2.  The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Ricky Jones and close this case.

IT IS SO ORDERED.

Dated:   **January 20, 2023**                          _____

UNITED STATES MAGISTRATE JUDGE